UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECHIR SLIM,<br><br>   Plaintiff,<br><br>  v.<br><br>KIRSTJEN NIELSON, et al.,<br><br>   Defendants. | Case No. 18-cv-02816-DMR<br><br>**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

  Petitioner Bechir Slim is a noncitizen from Tunisia who is currently in Immigration and Customs Enforcement ("ICE") custody pending the conclusion of his removal proceedings. On May 13, 2018, Mr. Slim filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asks the court to order his release from custody or to direct the government to provide him with a bond hearing that comports with due process. [Docket No. 1.] The court issued an Order to Show Cause why the petition should not be granted, and Respondents timely filed a response and return, followed by Mr. Slim's traverse and Respondents' reply. [Docket Nos. 7, 12 (Return), 19 (Traverse), 20 (Reply).]

  This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the petition is denied.

**I. BACKGROUND**

  Mr. Slim, a native and citizen of Tunisia, entered the United States in August 2016 on an A-2 visa to attend military training sponsored by the Department of Defense in Roswell, New Mexico. [Docket No. 13 (Choi Decl., June 22, 2018) ¶ 3.] Mr. Slim alleges that he was afraid to return to Tunisia at the completion of his training because Ansat Alshara terrorists in Tunisia have repeatedly threatened him with death "due to his mechanical engineering knowledge." Petition ¶¶ 21, 25. He alleges that he reported his fear of returning to Tunisia to his army supervisor but

"there was no investigation or offers of protection." He then "relocated to California where he has family friends." *Id*. at ¶¶ 21, 25. Mr. Slim was declared absent without leave ("AWOL") on December 23, 2016, and later filed an application for asylum and for withholding of removal. Choi Decl. ¶ 4, Ex. A; Petition ¶ 21.[1]

ICE initiated removal proceedings for Mr. Slim's failure to comply with the conditions of the status under which he was admitted to the United States and for overstaying his visa. Choi Decl. ¶¶ 5, 6, Exs. B, C. The Department of Homeland Security ("DHS") took Mr. Slim into custody on November 2, 2017. *Id*. at ¶ 5; Petition ¶ 2. ICE determined that Mr. Slim should be detained pursuant to 8 U.S.C. § 1226(a) pending removal proceedings and Mr. Slim requested review of that custody determination by an immigration judge ("IJ"). Choi Decl. ¶ 7, Exs. D, E. IJ Anthony Murry held a bond hearing on November 27, 2017 at which Mr. Slim was represented by counsel. The IJ determined that Mr. Slim was a flight risk and denied his release on bond. *Id*. at ¶ 8. The IJ issued a written memorandum setting forth his decision on December 29, 2017. *Id*. at ¶ 8, Ex. F; Petition Ex. A (Bond Decision). Mr. Slim appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which denied his appeal on April 13, 2018. Choi Decl. ¶ 9, Ex. G; Petition Ex. B (BIA Decision).

IJ Alison Daw held a removal hearing on March 9, 2018 and denied Mr. Slim's application for protection. Choi Decl. ¶ 10, Ex. H. She ordered Mr. Slim removed to Tunisia. *Id*. Mr. Slim filed an appeal of the decision on April 5, 2018, and briefing was scheduled to be completed on June 27, 2018. *Id*. at ¶ 11, Exs. I, J. It does not appear that Mr. Slim currently is subject to a final removal order.

Mr. Slim alleges two claims for relief in his present petition for a writ of habeas corpus. His first claim is for violation of his Fifth Amendment due process rights. It is based upon his contentions that 1) the IJ did not apply the correct standard in determining that he was a flight risk

---

[1] Choi states that Mr. Slim filed "an application for protection under U.S. immigration law" on February 27, 2017, while Mr. Slim alleges that he "affirmatively submitted his I-589, Application for Asylum and for Withholding of Removal" on or about July 13, 2017. Choi Decl. ¶ 4; Petition ¶ 21. It is not clear whether Mr. Slim filed two separate asylum applications, as neither of these applications are in the record. This discrepancy is not material to the court's decision.

2

and failed to consider alternatives to detention, and 2) his continued detention without a bond hearing is unlawful and in violation of his due process rights. In his second claim for relief, Mr. Slim asserts that his detention and prolonged detention without a bond hearing violates the Eighth Amendment.

## II. FIFTH AMENDMENT CLAIMS

### A. Detention of Noncitizens under 8 U.S.C. § 1226(a)

The Immigration and Nationality Act ("INA") provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a noncitizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id*. In general, section 1226(a) governs detention during the pendency of a noncitizen's removal decision, and section 1231 governs detention following the issuance of a final removal order. The parties agree that Mr. Slim is detained pursuant to section 1226(a). Return 2; Traverse 8.

Section 1226(a) provides the Attorney General with discretionary authority to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Prieto-Romero*, 534 F.3d at 1057. After detention, "the DHS district director makes an initial custody determination and may allow the alien's release on bond." *Prieto-Romero*, 5343 F.3d at 1058 (citing 8 C.F.R. § 236.1(d)). A noncitizen detained pursuant to section 1226(a) can appeal ICE's initial custody determination by requesting a bond redetermination hearing before an IJ, who is authorized to "release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. § 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19(a) (granting immigration judges jurisdiction to review custody and bond determinations). At the redetermination hearing, the noncitizen bears the burden of establishing "that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006).[2]

---

[2] The government does not contend that Mr. Slim poses a danger to the community or is a threat to

3

In *Matter of Guerra*, the BIA listed the factors that IJs may consider when determining whether a noncitizen merits release on bond. These factors are:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

24 I. & N. Dec. 37, 40; *see Prieto-Romero*, 534 F.3d at 1066 (endorsing use of *Matter of Guerra* factors when considering detention under § 1226(a)). "The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Matter of Guerra*, 24 I. & N. Dec. at 40.

A noncitizen may appeal an IJ's bond decision to the BIA. 8 C.F.R. § 236.1(d)(3)(i). A noncitizen who remains detained under section 1226(a) after the initial bond hearing may request a subsequent bond redetermination whenever his or her "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

"[D]iscretionary decisions granting or denying bond are not subject to judicial review[.]" *Prieto-Romero*, 534 F.3d at 1058 (citing 8 U.S.C. § 1226(e)). 8 U.S.C. § 1226(e) "precludes an alien from 'challeng[ing] a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). However, as acknowledged by Respondents, section 1226(e) "does not strip a district court of its traditional habeas jurisdiction, 'bar constitutional challenge[s]' or preclude a district court from addressing a habeas petition 'challeng[ing] the statutory framework that permits [the petitioner's] detention without bail.'" *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Demore*, 538 U.S. at 516-17); *see* Return 4. Thus, the district court retains habeas jurisdiction over "constitutional claims or questions of law." *Singh*, 638 F.3d at 1202. "[C]laims that the discretionary process itself was

---

the national security.

4

constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" *Id.* (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002)).

**B. Discussion**

**1. Whether the IJ's Decision to Deny Mr. Slim Release on Bond Violated Due Process**

Mr. Slim argues that the IJ's decision to deny him release on bond fell below "the standards of fairness that Due Process requires." Traverse 2. He asserts that the court has habeas jurisdiction to review the bond decision because the IJ incorrectly applied the *Matter of Guerra* standard. *See id*. at 5-6.

The IJ conducted a bond hearing on November 27, 2017 at which Mr. Slim was represented by counsel and presented testimonial and documentary evidence. Choi Decl. ¶ 8. In his December 29, 2017 written decision denying Mr. Slim's release on bond, the IJ described Mr. Slim's entry into the United States as follows:

> The respondent is a member of the Tunisian Armed Forces. He was brought to the United States in August 2016 for military training at a U.S. Air Force base in New Mexico. After finishing the five-month training program he did not return to Tunisia. Respondent said he did not return because militant Islamist groups in Tunisia threatened to kill him if he did not join them upon his return. However, the respondent did not tell the U.S. Air Force about this alleged problem, and he did not apply for asylum in New Mexico. Instead, he went absent without leave, and travelled to San Francisco, where he got a job working in a store.

Bond Decision 1. The IJ further stated that in addition to Mr. Slim's "claimed fear of Islamist militants, respondent said he also thought he would be court-martialed and sent to prison for desertion." *Id*. The IJ found that Mr. Slim is single and has no children, that his parents do not have legal status in the United States, and that he does not own property in the United States. *Id.*

The IJ noted that *Matter of Guerra* lists "a number of factors that an immigration judge may consider in assessing a bond request," but that "an 'IJ may choose to give greater weight to one factor over others, as long as the decision is reasonable.'" Bond Decision 1 (quoting *Matter of Guerra*, 24 I. & N. Dec. at 40). The IJ concluded that Mr. Slim "is an acute risk of flight":

> [T]he respondent's lack of family or property ties, and his demonstrated willingness to desert his post in New Mexico without alerting his superiors of his alleged fear shows that respondent is an acute risk of flight. In addition, the respondent's testimony that he faces prosecution in Tunisia for desertion gives him a great incentive to flee, and militates against release on bond.

*Id*. at 2.

Mr. Slim concedes that it was his burden at the bond hearing to establish that he did not pose a flight risk. Traverse 4; *see Matter of Guerra*, 24 I. & N. Dec. at 38. However, he contends that "the IJ legally erred in concluding that [Mr. Slim] had failed to meet his burden of establishing th[at] he is not a flight risk." Traverse 4. While Mr. Slim acknowledges that the IJ properly identified *Matter of Guerra* as providing the standard for determining whether he merited release on bond, he argues that the IJ erred by failing to consider all of the *Guerra* factors, and by assigning more weight to some factors than others without explaining his reasoning. Petition ¶ 31; *see* Traverse 5. Thus, Mr. Slim contends that the IJ should have considered the fact that Mr. Slim has a fixed address in the United States, has "family friends in the San Francisco Bay Area," "has always complied with every immigration request," and lawfully entered the United States. Petition ¶ 32; Traverse 5. According to Mr. Slim, the IJ unreasonably gave other factors greater weight, including his desertion of his Tunisian army post, the possibility of his prosecution upon returning to Tunisia, and his lack of family and property ties in the United States. Petition ¶¶ 33, 34; Traverse 5.

To the extent Mr. Slim argues that the IJ committed reviewable legal error in the application of the *Matter of Guerra* factors, he is incorrect. Contrary to Mr. Slim's contention, *Matter of Guerra* does not require an IJ to consider *all* of the listed factors. *See Matter of Guerra*, 24 I. & N. Dec. at 40 ("Immigration Judges may look to a number of factors in determining whether an alien merits release from bond . . . [t]hese factors may include any or all of the following:"). Nor does *Matter of Guerra* dictate how the factors must be evaluated, which factors are the most important, or how the IJ must weigh them. To the contrary, *Matter of Guerra* provides that IJs "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id*. Although Mr. Slim argues that the IJ should have weighed more heavily the fact that he has a history of cooperating with immigration authorities, *see* Traverse 5,

the IJ was within his discretion to place greater weight on the circumstances of Mr. Slim's entry into the United States and eventual abandonment of his military post, lack of family or property ties in this country, and his potential criminal prosecution in Tunisia. "A district judge may not second-guess the immigration judge's weighing of the evidence." *Calmo v. Sessions*, No. C 17-07124 WHA, 2018 WL 2938628, at *4 (N.D. Cal. June 12, 2018). *See also Prieto-Romero*, 534 F.3d at 1058 ("discretionary decisions granting or denying bond are not subject to judicial review" (citing 8 U.S.C. § 1226(e)). Despite Mr. Slim's attempt to frame this argument as a due process violation, it amounts to a challenge to the IJ's discretionary weighing of the evidence. *See Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001) ("[A] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb.").

Mr. Slim cites two cases to support his claim that courts may review bond decisions to determine whether the decisions are legal and constitutional, and that this case falls within the scope of that review. The two cases are *Ramos v. Sessions*, No. 18-cv-00413-JST, 2018 WL 905922 (N.D. Cal. Feb. 15, 2018), which was followed by *Ramos v. Sessions* ("*Ramos II*"), 293 F. Supp. 3d 1021, 1024-25 (N.D. Cal. 2018), and *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889 (N.D. Cal. Apr. 20, 2017). Traverse 3. Neither case supports Mr. Slim's position.

*Ramos* and *Obregon* are distinguishable because the petitioners in those cases did not simply challenge the IJs' discretionary weighing of factors in reaching a bond determination, as Mr. Slim does here. Instead, the petitioners in *Ramos* and *Obregon* challenged the quantum of evidence supporting the IJs' conclusion that the government had met its burden to establish dangerousness by clear and convincing evidence, and argued that those determinations accordingly failed to comply with due process. Both cases involved proceedings in which the government bore the burden of establishing by clear and convincing evidence that continued detention of the petitioners was appropriate. *See Ramos*, 2018 WL 905922, at *4; *Ramos II*, 293 F. Supp. 3d at 1025; *Obregon*, 2017 WL 1407889, at *3. *See also Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1002 (N.D. Cal. 2018) (district court has habeas jurisdiction to determine whether IJ acted properly in relying solely on an arrest to find that petitioner presented a danger to

the community, where there was no probable cause determination by a court or grand jury and no other evidence to support a finding that petitioner committed the crime for which she was arrested).

Here, Mr. Slim does not challenge any of the evidence presented at the hearing, nor does he argue that the IJ erred in analyzing whether the party bearing the burden of proof met the applicable quantum of evidence. Mr. Slim does not dispute any of the IJ's factual findings, including his determination that Mr. Slim "went absent without leave." He also does not challenge the fairness of the bond hearing itself, as he was represented at the hearing by counsel, testified, and presented documentary evidence, and was able to exercise his right of appeal. Instead, he argues that the IJ erred in weighing the evidence and disagrees with the outcome of that process, a determination that was "well within the province of the immigration judge." *See Calmo*, 2018 WL 2938628, at *5 ("this order finds that in light of the undisputed evidence any differences in interpretation of the facts remained well within the province of the immigration judge.").

Mr. Slim also argues that the IJ violated his due process rights by failing to consider alternatives to detention. Petition ¶ 36. In his traverse, he raises a new, related argument: that the IJ denied Mr. Slim due process when he failed to consider "whether no amount of bond could overcome [his] alleged flight risk." Traverse 7. In custody redetermination proceedings, IJs are "authorized . . . to detain the alien in custody, release the alien, and determine *the amount of bond, if any*, under which the respondent may be released[.]" 8 C.F.R. § 236.1(d)(1) (emphasis added). In his decision, the IJ noted that Mr. Slim "sought release on bond" and concluded that Mr. Slim was "an acute risk of flight." He also discussed Mr. Slim's testimony that "he faces prosecution in Tunisia for desertion," concluding that that "gives him a great incentive to flee, and militates against release on bond." Bond Decision 1-2. The decision denying bond necessarily implies that the IJ concluded that no amount of bond was appropriate. Mr. Slim points to no authority that supports his claim that the IJ is required in every circumstance to discuss alternatives to detention or whether any amount of bond can overcome a risk of flight.

In sum, the court concludes that the IJ's decision finding Mr. Slim posed a flight risk and

denying his release on bond did not violate Mr. Slim's constitutional right to due process. To the extent Mr. Slim is challenging the IJ's discretionary weighing of the evidence, this court lacks jurisdiction to review that analysis.

### 2. Whether Mr. Slim is Entitled to a Second Bond Hearing

Mr. Slim next contends that his detention, which has exceeded nine months, has become "prolonged" under Ninth Circuit authority. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011) (holding that detention of noncitizen becomes prolonged after 180 days in custody). He argues that he is therefore entitled to a new bond hearing at which the government bears the burden of establishing by clear and convincing evidence that continued detention is justified because he presents a flight risk.[3] Petition ¶¶ 8, 37-48.

Under previous Ninth Circuit authority, the government was required to provide automatic bond hearings every six months to noncitizens who were detained pursuant to section 1226(a) as a matter of statutory interpretation. *Rodriguez v. Robbins*, 804 F.3d 1060, 1089 (9th Cir. 2015). At such hearings the government bore the burden of establishing by clear and convincing evidence that a noncitizen was either a danger to the community or a flight risk. *Id*. at 1074, 1087. The Supreme Court reversed *Rodriguez* in *Jennings*, holding that the Ninth Circuit had misapplied the canon of constitutional avoidance as to three provisions of the INA, including section 1226(a), because its interpretations of those provisions were "implausible." *Jennings*, 138 S. Ct. at 842. As to section 1226(a), the Court noted that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Id*. at 847. The Court held that "[n]othing in § 1226(a)'s text . . . supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id*.

---

[3] It is not clear whether Mr. Slim contends that he is entitled to a new bond hearing because the IJ's November 2017 bond decision was constitutionally deficient, or whether he argues that he is entitled to a new bond hearing even if the November 2017 decision comported with due process. The court need not resolve the first issue, for as discussed above, it concludes that there was no due process violation.

9

The Court noted that "[b]ecause the [Ninth Circuit] erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits"—namely, the argument that "'prolonged' detention in the absence of an individualized bond hearing at which the Government proves by clear and convincing evidence that the class member's detention remains justified" would violate the Due Process Clause of the Fifth Amendment. 138 S. Ct. at 839, 850. The Court remanded the case to the Ninth Circuit to consider those constitutional arguments. *Id*. at 850. This question is currently pending before the Ninth Circuit; briefing was scheduled to be completed in July 2018. *See Rodriguez v. Jennings*, 887 F.3d 954, 956 (9th Cir. 2018).

Mr. Slim concedes that there is no authority mandating that noncitizens detained pursuant to section 1226(a) merit a new bond hearing once their detention has become prolonged by exceeding 180 days. However, he contends that "Due Process itself requires such an individualized determination," citing *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942, 950 (9th Cir. 2008). Traverse 7-8. In *Casas-Castrillon*, a lawful permanent resident who had been detained for nearly seven years sought habeas relief while his petition for review of his removal order was pending. The Ninth Circuit determined that he had been detained under section 1226(c) during his initial removal proceedings, and then was detained under section 1226(a) while he appealed his order of removal. 535 F.3d at 945-48. The court held that the "prolonged detention" of a noncitizen under section 1226(a) "without adequate procedural protections," such as access to a bond hearing before an immigration judge, "would raise serious constitutional concerns." *Id*. at 950. Given those concerns, the court construed section 1226(a) to require the government to provide a lawful permanent resident with "a neutral forum in which to contest the necessity of his continued detention," at which the government must establish that the individual poses a flight risk or a danger to the community in order to justify continued detention. *Id*. at 949, 951.

While Respondents question whether *Casas-Castrillon* remains good law after *Jennings*, the court need not resolve that issue. In *Casas-Castrillon*, the court held that the prolonged detention of a noncitizen under section 1226(a) "is permissible only where the Attorney General

//

//

//

finds such detention individually necessary by providing the alien with an adequate opportunity to contest the necessity of his detention." 535 F.3d at 951. As discussed above, Mr. Slim received an individualized bond hearing before an IJ that comported with due process, consistent with *Casas-Castrillon*. *See Calmo*, 2017 WL 2938628, at *3 (presuming "that an individual's prolonged detention of 28 months without a bond hearing would violate the Due Process clause," but noting that petitioner "received a constitutionally adequate bond hearing"); *Fofana v. Clark*, 288 Fed. Appx. 432, 435 (9th Cir. 2008) (denying claim that noncitizen detained under section 1226(a) had not "received a sufficient individualized determination of the governmental interest in his continued detention" where he received a bond redetermination hearing before an IJ that he did not challenge as deficient). Mr. Slim may request a new bond hearing if he can show that his circumstances have changed materially, 8 C.F.R. § 1003.19(e), and has not cited any authority that supports his claim that he is entitled to an additional bond hearing in the absence of changed circumstances. Therefore, on these facts, where Mr. Slim received an individualized bond hearing that comported with due process, has been detained for less than one year, and may request a new bond hearing if he can show changed circumstances, the court denies his due process claim.

### III. EIGHTH AMENDMENT CLAIM

Mr. Slim contends alleges that his detention and prolonged detention without a bond hearing violates the Eighth Amendment. The government argues that this claim must be denied because the Eighth Amendment does not apply to immigration detention. Mr. Slim did not respond to this argument in his traverse. "[D]eportation proceedings are civil, rather than criminal, in nature." *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002) (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)). Accordingly, Mr. Slim is not entitled to habeas relief on the ground that his immigration detention violates the Eighth Amendment's prohibition against cruel and unusual punishment. *See Calmo*, 2018 WL 2938628, at *5 (N.D. Cal. June 12, 2018). This claim is accordingly denied.

## IV. CONCLUSION

For the foregoing reasons, Mr. Slim's habeas petition is denied.

**IT IS SO ORDERED.**

Dated: August 29, 2018



Donna M. Ryu
United States Magistrate Judge